PETER C. ANDERSON
UNITED STATES TRUSTEE
ABRAM S. FEUERSTEIN, SBN 133775
ASSISTANT UNITED STATES TRUSTEE
EVERETT L. GREEN, SBN 237936
TRIAL ATTORNEY
UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
3801 University Avenue, Suite 720
Riverside, CA 92501
Telephone:      (951) 276-6990
Facsimile:      (951) 276-6973
Email:      Everett.L.Green@usdoj.gov

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>MICHAEL CHARLES RULIFSON,<br><br><br>      Debtor. | Case No. 6:12-bk-24905-MJ<br><br>Hon. Meredith A. Jury<br><br>Chapter 11<br><br>**UNITED STATES TRUSTEE'S MOTION TO DISMISS OR CONVERT BANKRUPTCY CASE PURSUANT TO 11 U.S.C. § 1112(b) AND LOCAL BANKRUPTCY RULE 2015-2; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**[Declaration of Herman Au, filed concurrently herewith]**<br><br><br>Date:    March 4, 2015<br>Time:    1:30 p.m.<br>Place:   United States Bankruptcy Court<br>         Courtroom 301<br>         3420 Twelfth St.<br>         Riverside, CA 92501-3819 |

## MOTION

Peter C. Anderson, the United States Trustee for the Central District of California, Region 16 (the "U.S. Trustee"), hereby moves, pursuant to 11 U.S.C. § 1112(b), 28 U.S.C. § 586, Federal Rule of Bankruptcy Procedure 2015, and Local Bankruptcy Rule 2015-2, [1] to dismiss the chapter 11 bankruptcy case filed by debtor Michael Charles Rulifson ("Motion").

Conversion or dismissal is warranted because the mistakes and errors in the Debtor's monthly operating reporting have allowed the Debtor to hide the estate's payments of unsecured debt and negative cash flow.

In accordance with Federal Rule of Evidence 201, the U.S. Trustee requests that the Court take judicial notice of the petition, schedules and all documents filed in this case.

This Motion is based on the attached Memorandum of Points and Authorities, the supporting declarations of Herman Au ("Au Decl.") and exhibits attached thereto and such argument or evidence that may be presented at the hearing on the Motion.

DATED: February 2, 2015                          PETER C. ANDERSON
                                                 UNITED STATES TRUSTEE


                                         By:     /s/ Everett L. Green
                                                 Everett L. Green
                                                 Trial Attorney

---

[1]    Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    BACKGROUND AND STATEMENT OF FACTS

3          Mr. Rulifson serves as a president, shareholder and chief executive officer of several

4    business entities.  (Au Decl. ¶ 3, Exh. 1, pg. 10.)  As a debtor-in-possession, he has filed 24

5    monthly operating reports.  (*See* Exh. 7, pg. 67.)  In each report he declares, under penalty of

6    perjury, that he did not pay any of his pre-petition unsecured debt.  (*See* Exh. 3, pg. 41.)  Yet from

7    July 2012 to April 2013 the Debtor repaid $7,000 of his credit card debt.[2]  (Au Decl. ¶ 3, Exh. 4, pg.

8    48; Exh. 5, pg. 55; & Exh. 7, pg. 67.)  The unauthorized payment of unsecured debt constitutes

9    gross mismanagement of the estate and is cause to dismiss or convert.

10         The monthly operating reports contain substantial errors and mistakes.

11   (*See* Au Decl. ¶ 7.)  The Debtor commenced this case on June 21, 2012.  (Au Decl. ¶ 7, Exh. 2,

12   pg. 14.)  He did not file a monthly operating report with the Court until November 12, 2012.

13   (Au Decl. ¶ 7, Exh. 2, pg. 20.)  The September 2012 report is handwritten and illegible and does not

14   contain bank statements.  (Au Decl. ¶ 7, Exh. 3, pps. 36-41.)  The November 2012 report consists of

15   only the caption page.  (Au Decl. ¶ 7, Exh. 3, pps. 43-44.)

16         Many of the monthly operating reports fail to disclose insurance coverage and the status of

17   payments to secured creditors.  (Au Decl. ¶ 7.)  The reports contain math errors and fail to

18   accurately calculate total receipts and disbursements.  (*Id.*)  The irregularities and mistakes in the

19   financial reporting have made it difficult for the U.S. Trustee, much less creditors, to monitor the

20   Debtor's post-petition performance.

21         As a result, the U.S. Trustee submitted multiple discovery requests to Debtor's counsel in an

22   attempt to understand the Debtor's financial activity.  (*See* Exh. 4.)  In addition to learning that the

23   Debtor paid his credit card debt, counsel informed the U.S. Trustee that the Debtor did not pay the

24   mortgage on his rental property for 11 months, owes post-petition arrears of $50,530.70, and did

25   not collect any rent on his rental property.  (Exh. 6, pg. 65.)

26

27

28

---

[2]       The Debtor did not report any credit card debt on Schedule F.

1  And the U.S. Trustee learned from the Debtor's secured creditor that the Debtor failed to

2  make at least 22 payments on his home mortgage.[3]

3  The monthly operating reports do not contain any of this information.  The errors and

4  mistakes in the monthly operating reports have allowed the Debtor to hide the estate's substantial

5  losses.  The case should be dismissed or converted.

6  ## II.   JURISDICTION AND STANDING

7  This Court has jurisdiction pursuant to 28 U.S.C §§ 157 and 1334.  This matter is a core

8  proceeding within the meaning of 28 U.S.C. § 157(b)(2)(a) and (O).  Venue of these proceedings

9  and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

10  The U.S. Trustee is a recognized party-in-interest with standing to request dismissal or

11  conversion of a Chapter 11 case.  28 U.S.C. § 586(a)(8) ("in any case in which the United States

12  trustee finds material grounds for relief under § 1112 of title 11, the United States trustee shall

13  apply promptly after making that finding to the court for relief"); *Johnston v. Jem Development Co.*

14  *(In re Johnston)*, 149 B.R. 158, 160 (B.A.P. 9th Cir. 1992).

15  Further, 28 U.S.C. § 586 specifically directs the U.S. Trustee to diligently monitor a

16  debtor-in-possession's activities "to prevent undue delay" and to promptly notify the Court when it

17  finds material grounds for relief under section 1112(b).  28 U.S.C. § 586(a)(3)(G), (a)(8).

18  ## III.   ARGUMENT

19  ### A.   Standards Governing Conversion Or Dismissal For "Cause"

20  Section 1112(b) provides that a court must dismiss or convert a case, whichever is in the

21  best interests of creditors and the estate, if the movant establishes "cause" and the debtor is unable

22  to produce evidence of unusual circumstances demonstrating that conversion or dismissal is not be

23  in the best interests of creditors or the estate.[4]  11 U.S.C. § 1112(b)(1).  Subsection (b)(4) contains

24

25  [3]  *See Motion for Relief from Automatic Stay*, pg. 7 Docket. No. 101.  In 2014, the lender

26  agreed to a short sale.  *See* Docket No. 119.

27  [4]  Prior to the enactment of BAPCPA, the decision to convert or dismiss a Chapter 11 case
upon a showing of cause was discretionary.  BAPCPA circumscribed a bankruptcy court's

28  discretion by replacing "may" with "shall" and expressly mandating that the court dismiss or
convert if the movant establishes cause.  *See* 11 Alan N. Resnick & Henry J. Sommer, Collier on
Bankruptcy ¶ 1112.04[1] at 1112-41 (16th ed. 2010)).

sixteen examples of events that may constitute cause.  This list, however, is not exhaustive and courts are free to consider other factors.  *In re FRGR Managing Member, LLC*, 419 B.R. 576, 580 (Bankr. S.D.N.Y. 2009) (citing cases).  Once a party establishes cause, a court must examine whether dismissal or conversion is in the best interests of the creditor and the estate. 11 U.S.C. § 1112(b).

## **B.** **Mistakes In The Financial Reporting Obscures The Estate's Substantial And Continuing Losses.**

Negative post-petition cash flow is evidence of a continuing loss to the estate.  *See Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 515-16 (8th Cir. 2004); *In re Schriock Constr. Inc.*, 167 B.R. 569, 575 (Bankr. D.N.D. 1994).  So too is a debtor's inability to meet the basic operating expenses necessary to the viability of its enterprise.  *Schriock Constr.*, 167 at 576.  Because the monthly operating reports fail to accurately calculate disbursements and receipts, the U.S. Trustee prepared an analysis of the Debtor's income and expenses.  The analysis reveals negative balances in the debtor-in-possession ("DIP") account:

| Monthly Operating Report | DIP Account Balance |
| --- | --- |
| March 2014 | No report filed |
| April 2014 | ($68.42) |
| May 2014 | No report filed |
| June 2014 | ($412.10) |
| July 2014 | $262.10 |
| August 2014 | ($1,876.51) |

Au Decl. ¶ 14, Exh. 7, pg. 67.

Many of the monthly operating reports fail to report the status of the Debtor's payments to its secured creditors.  The Debtor's secured debt payments total $5,293, consisting of $700 monthly payments to Harley-Davidson and a monthly payment of $4,593 for the rental property.

When payments to secured creditors are factored in, the negative balances in the DIP account are even greater:

| Monthly Operating Report | DIP Account Balance |
|---|---|
| March 2014 | No report filed |
| April 2014 | ($4,661.42) |
| May 2014 | No report filed |
| June 2014 | ($5,005.10) |
| July 2014 | ($4,330.90) |
| August 2014 | ($6,469.51) |

Au Decl. ¶ 15, Exh. 7, pg. 67. Even after selling his home for a loss, the Debtor is unable to pay his secured creditors and sustain a positive cash flow. The estate is suffering substantial and continuing losses.

Similarly, the Debtor does not have a likelihood of rehabilitation. The concept of rehabilitation necessarily hinges upon establishing a cash flow from which current obligations can be satisfied. *Schriock Constr.*, 167 B.R. at 577.

The negative balances in the DIP account must be considered along with the Debtor's inability to generate income from his rental property. The Debtor's relatives reside in the rental. The Debtor has not collected rental income since the petition date. His arrears are increasing monthly such that, according to Debtor's counsel, "the rental property is upside down" and the Debtor could not challenge a request for stay relief by the rental property's creditors. *See* Exh. 6, pg. 65.

Equally distressing, the Debtor has not identified any new sources of income. The Debtor's exit strategy appears to involve winning a state court appeal and reversing a judgment entered against the Debtor and other defendants. If the Debtor prevails, there is no evidence that any new funds will come into the estate.

The Debtor simply has not exhibited short-term profitability which is necessary to establish the feasibility of a proposed plan. Without a reasonable "amount of assets and positive cash flow, there is no logic in continuing a Chapter 11 [case]." *In re 312 W. 91st Street Co.,* 35 B.R. 346, 347 (Bankr. S.D.N.Y. 1983). The case should be converted or dismissed.

**C.** **The Lack Of Transparency In The Financial Reporting Allows The Debtor To Mismanagement The Estate.**

In each monthly report the Debtor declares, under penalty of perjury, that he did not make any payments on his pre-petition unsecured debt. Yet from July 2012 to April 2013 the Debtor made incremental payments of $500-$2,000 toward his credit card debt. The Debtor eventually stopped the payments after multiple requests from the U.S. Trustee. The unauthorized payment of unsecured debt constitutes gross mismanagement of the estate and is grounds for conversion or dismissal.

**D.** **The Debtor's Failure To Comply With The Financial Reporting Requirements Requires Conversion Or Dismissal.**

The "unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter" is cause to convert or dismiss a Chapter 11 case. 11 U.S.C. § 1112(b)(4)(F). The U.S. Trustee Guidelines, made applicable by Local Bankruptcy Rule 2015-2, requires debtors-in-possession to report all financial information by the 15th of each month. The Guidelines are clear that the submission of an incomplete report is treated as a failure to submit the report. And the Local Bankruptcy Rules are clear that a debtor must submit a monthly operating report to the Court.

The Debtor's financial reporting violates these rules. The Debtor did not file monthly reports in August 2012, August 2013, March 2014, and May 2014. The Debtor submitted reports in June and July 2012 directly to the U.S. Trustee. Those submissions do not satisfy the Bankruptcy Code or the Local Bankruptcy Rules. *See* LBR 2015-2 (monthly operating reports must be filed with the Court and submitted to the U.S. Trustee). The November 2012 report consists of only the caption page and contains no other data. After August 2014, the Debtor stopped filing reports - even after notification from the U.S. Trustee. The Debtor's dilatory conduct in complying with the mandatory reporting requirements constitutes cause to convert or dismiss.

**E.**    **The Undue Delay And Lack Of Progress In This Three Year Case Constitutes Cause To Convert or Dismiss.**

Courts hold wide discretion to consider any and all factors suggestive of "cause" to convert or dismiss. *In re FRGR Managing Member, LLC*, 419 B.R. 576, 580 (Bankr. S.D.N.Y. 2009) (section 1112 is not exhaustive and a court is fee to consider non-enumerated factors). One factor is the concept of undue delay. To prevent prejudice to creditors, Courts impose restrictions against permitting a debtor to "park" in chapter 11. *See, e.g., In re Milford Connecticut Associates, L.P.*, 389 B.R. 303 (Bankr. D. Conn. 2008) (to enjoy the protections of the Code, a debtor must pursue an expeditious reorganization; it cannot have its cake and eat it too); *In re BH S & B Holdings, LLC*, 439 B.R. 342, 347 (Bankr. S.D.N.Y. 2010) ("a debtor cannot wallow in chapter 11"). The lack of progress and undue delay is apparent here. In almost three years, the Debtor has not proposed a plan or provided notice of its strategy to exit bankruptcy. The Debtor's strategy of waiting for resolution of his appeal while the estate becomes insolvent is untenable. Conversion or dismissal is appropriate.

**F.**    **The Debtor's Failure To Provide Evidence of Insurance Threatens To Expose The Estate To Administrative Expense Liability.**

A debtor's "failure to maintain appropriate insurance that poses a risk to the estate constitutes "cause" to dismiss. 11 U.S.C. § 1112(b)(4)(C). A debtor's inability to pay an insurance premium is not relevant to the court's inquiry. *See, e.g., Gilroy v. Ameriquest Mortgage Co.,* 2008 Bankr. LEXIS 3968, at *13-14 (B.A.P. 1st Cir. 2008).[5]

The Debtor's liability coverage for the rental property, vehicles and watercraft expired in 2012. The Debtor has not provided proof to the U.S. Trustee that these items are currently insured. The case must be dismissed or converted.

---

[5]    In accordance with LBR 9013-2(c)(3)(D), a true and correct copy of this cited case is attached the supporting declaration as an exhibit.

1

## VI.    **CONCLUSION**

2

The Debtor's financial reporting is not reliable and does not accurately convey the estate's

3  increasing insolvency.  The Debtor has not earned positive income in any month since the filing of

4  the case.  The case should be dismissed or converted.

5

6  DATED: February 2, 2015                   PETER C. ANDERSON
                                             UNITED STATES TRUSTEE
7

8

9                                        By:    /s/ Everett L. Green
                                                Everett L. Green
10                                              Trial Attorney

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Attachment



**ROSEMARY ANN GILROY, Debtor. ROSEMARY ANN GILROY, Appellant, v. AMERIQUEST MORTGAGE COMPANY, AMC MORTGAGE SERVICES, JAMES KASPER, Trustee of the Ponemah Trust, and the U.S. TRUSTEE, Appellees.**

**BAP NO. NH 07-054**

**UNITED STATES BANKRUPTCY APPELLATE PANEL FOR THE FIRST CIRCUIT**

*2008 Bankr. LEXIS 3968*

**August 1, 2008, Decided**

**NOTICE:**   NOT FOR PUBLICATION

**PRIOR HISTORY:**  [*1]

   Appeal from the United States Bankruptcy Court for the District of New Hampshire. Bankruptcy Case No. 06-10786-MWV. (Hon. Mark W. Vaughn, U.S. Bankruptcy Judge).
*Gilroy v. Ameriquest Mortg. Co., 2008 U.S. Dist. LEXIS 20812 (D.N.H., Mar. 11, 2008)*

**COUNSEL:** Rosemary A. Gilroy, Pro se, on brief for Appellant.

Geraldine Karonis and Ann Marie Dirsa, on brief for Appellee U.S. Trustee.

**JUDGES:** Before Lamoutte, de Jesus, and Hillman, United States Bankruptcy Appellate Panel Judges.

**OPINION BY:** Lamoutte

**OPINION**

   **Lamoutte, U.S. Bankruptcy Appellate Panel Judge**.

   Ms. Rosemary Ann Gilroy (the "Debtor") appeals the bankruptcy court's order dismissing her chapter 11 case for failure to maintain insurance for five condominiums located at 107 Ponemah Road, Amherst, New Hampshire. 1 The record on appeal clearly shows that the Debtor failed to maintain real property insurance over property of the estate. Thus, the bankruptcy court's finding that "cause" existed to dismiss or convert the Debtor's case under *11 U.S.C. § 1112(b)* 2 is not clearly erroneous. Further, the bankruptcy court's implied finding that the dismissal is in the best interest of creditors and the estate is not clearly erroneous. The bankruptcy court, therefore, did not err in dismissing the Debtor's case. We **AFFIRM** the dismissal order.

   1   The notice of appeal was [*2] filed prior to actual dismissal of the case on August 16, 2007, and identified the subject of the appeal as the bankruptcy court's August 2, 2007 order, which stated that the Debtor's case would be dismissed if she did not file a certificate of insurance by 12:00 p.m. on August 3, 2007. The Debtor subsequently filed a motion seeking permission to file a new notice of appeal, explaining that she had mistakenly thought that the August 2, 2007 order was a dismissal order. By prior order, the Panel construed her motion as an amended notice of appeal, thus establishing the August 16, 2007, dismissal order as the subject of the appeal.

2    Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§" refer to *Title 11 of the United States Code, 11 U.S.C. § 101 et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8.

## BACKGROUND

The Debtor owns a five-unit condominium development (the "Units") located at 107 Ponemah Road, Amherst, New Hampshire. The Debtor obtained financing from Ameriquest Mortgage Company ("Ameriquest") and from James Kasper, Trustee for the Ponemah Trust, in order to convert the same into residential units. The [*3] Debtor ran out of funds before construction was completed. On July 11, 2006, the Debtor filed a petition under chapter 13 of the Bankruptcy Code. The case was voluntarily converted to chapter 11 on November 20, 2006 because her secured debt exceeded the eligibility requirements of *§ 109(e)*.

The Debtor scheduled the five condominium Units with a fair market value of $ 2,345,000. She listed in Schedule D secured claims against the property in the amount of $ 1,240,816, including real estate tax liens of $ 36,539, [3] and listed in Schedule F unsecured nonpriority debt in the amount of $ 43,411. No priority claims were listed in Schedule E.

3    Debtor filed a Chapter 11 Plan of Reorganization as part of the chapter 11 Schedules and Statement of Financial Affairs containing a Liquidation Analysis describing the estate's real properties as follows:

Unit 1 has a fair market value of $ 650,000, liens in the amount of $ 308,000, and an exemption of $ 125,000, leaving $ 217,000 in equity;

Unit 2 has a fair market value of $ 445,000 and liens for $ 386,000, leaving $ 59,000 in equity;

Unit 3 has a fair market value of $ 425,000 and liens for $ 75,000, leaving $ 350,000 in equity;

Unit 4 has a fair market [*4] value of $ 435,000 and liens for $ 254,000, leaving $ 181,000 in equity; and

Unit 5 has a fair market value of $ 445,000 and liens for $ 75,000, leaving $ 370,000 in equity.

Ameriquest held liens over Units 1, 2 and 4; and James Kasper, Trustee of the Ponemah Trust, held liens over Units 3 and 5. The Debtor resided in Unit 1. Units 2, 3, 4 and 5 did not generate rental income because they were vacant and without occupancy permits. Throughout the travel of the case, the Debtor tried to sell these Units to no avail. On March 26, 2007, the Debtor informed the bankruptcy court that the arrears on the mortgages were in the vicinity of $ 80,000. The Debtor disclosed in Form B22 that her only income is $ 756 [4] monthly from Social Security benefits.

4    Schedule I provides that the Debtor's monthly income from Social Security is $ 754. Her brief on appeal states that her sole source of income is $ 718 per month. The difference in the amounts is irrelevant for purposes of this appeal.

On February 6, 2007, the United States Trustee (the "UST") moved to dismiss or convert the case for the Debtor's failure to make mortgage payments and file monthly operating reports. The motion noted that the Debtor's [*5] property insurance had been at risk of cancellation for nonpayment, but that the Debtor avoided cancellation by rendering a partial payment of the premium.

On March 26, 2007, the bankruptcy court held a hearing on the UST's motion to dismiss or convert the case, and the Debtor's request to refinance Units 3 and 5. The Debtor explained at the hearing that she was having great difficulty in selling the Units because they were without occupancy permits, and therefore, she concluded that it would be best to refinance the Units in order to become current on the mortgage payments and secure monies to pay for the construction work required to obtain occupancy permits. The Debtor also informed that she was in discussions with a lender regarding the refinancing of Units 3 and 5. Mr. Thomas Nealand, a mortgage broker, testified that two qualified lenders were

contemplating refinancing these Units, but the final decision would be made in two to three weeks. Mr. Nealand explained that there was a budget figure of $ 115,000 to finish the Units. Once construction was finished the Town of Amherst could issue the occupancy permits and the sale of the Units could take place. The bankruptcy court stated [*6] that the refinancing would not be approved until there was a firm commitment from a lender and an agreement to review.

The UST, in support of the motion to dismiss or convert, informed that the Debtor was delinquent in the payment of her quarterly fees, and stated that in light of the Debtor's limited income, heavy debt load, and unsuccessful efforts to sell the Units, there appeared to be a continuing diminution of the estate and an absence of a reasonable likelihood of reorganization. The UST suggested that the appointment of a chapter 11 trustee would be a better alternative than conversion to chapter 7, as a chapter 11 trustee "might actually attain fair market value," rather than liquidation value, for the Units. The UST also stated that dismissal of the case was not a bad alternative, as the secured creditors would have to go through state law procedures before they could take any direct action with respect to the Units. The bankruptcy court rejected the suggestion of the appointment of a chapter 11 trustee in this case, and noted that the Debtor is an individual "and it's hard to step into her shoes." The bankruptcy court concluded the hearing by stating that dismissal of the [*7] case was likely if the refinancing did not materialize in the next four or five weeks because "it could be almost ten months [since the Debtor commenced her chapter 11 case] by the time we have this next hearing, and if she can't do it in ten months or get some movement forward, it's just too long." The motion to dismiss or convert was continued to May 1, 2007.

The Debtor moved to continue the May 1, 2007 hearing. The UST opposed the motion for continuance stating, among other things, that the Debtor's insurance agent had informed her that the Debtor's insurance on the Units lapsed on April 18, 2007. Notwithstanding the opposition, the bankruptcy court continued the hearing to June 19, 2007, which the Debtor failed to attend. At the hearing, the UST stated to the bankruptcy court that the Debtor had failed to file her cash flow reports, and that it appeared the Debtor had not secured insurance for the Units or a commitment for refinancing. The bankruptcy court stated:

Well, I think under the circumstances, this has been going on for quite a while. I think -- I know the Court has given Ms. Gilroy every opportunity to try to salvage her investment in these condominiums. At this point in [*8] time I think I'm going to dismiss the case.

A dismissal order was not entered; instead, the bankruptcy court continued the hearing to June 26, 2007. The Debtor admitted at the hearing that she did not obtain insurance for the Units, but that coverage was provided on a few of the Units by Ameriquest. Counsel for Ameriquest clarified that Ameriquest had procured forced-place insurance over Units 1, 2 and 4, but only covering their interest. After listening to the Debtor's efforts to obtain insurance and refinancing, the bankruptcy court issued the following order: "Debtor will have insurance by July 13, 2007 or case will be dismissed upon receipt of affidavit by UST [stating that Debtor did not provide them with proof of insurance by such date]."

The Debtor did not obtain the insurance; rather, on July 13, 2007, she filed a motion seeking a further extension of two (2) weeks to obtain the insurance coverage. A hearing on that motion was held on July 24, 2007, eleven days after the July 13, 2007, deadline. After finding that the Debtor had failed to secure insurance and refinancing, the bankruptcy court issued the following order: "Debtor must have insurance by July 31, 2007. UST shall [*9] file affidavit." On July 31, 2007, the UST filed an affidavit stating that proof of insurance coverage had not been received.

On August 1, 2007, the Debtor filed another motion requesting an unspecified further extension. The bankruptcy court responded on August 2, 2007, without a hearing, with the following order:

The Debtor shall file with the Court a certificate of insurance by **August 3, 2007, at 12:00 p.m.** or the Debtor's case will be dismissed. This matter having been continued numerous times and the Debtor having been granted numerous extensions, the Court will not entertain any further emergency motions filed by the Debtor with regard to this matter.

The bankruptcy court clerk's office certified that the August 2, 2007 order was mailed on August 2, 2007. The Debtor failed to file the insurance certificate by August 3, 2007. On August 16, 2007, and proof of insurance still not yet on file, the bankruptcy court issued an order dismissing the Debtor's chapter 11 case. The Debtor then appealed the order dismissing the bankruptcy case. [5]

> 5 The Debtor argued in her brief on appeal that the bankruptcy court erred when it determined her homestead exemption. However, the only order on appeal [*10] is the bankruptcy court's dismissal of the bankruptcy case.

In her brief on appeal, the Debtor argued that the properties were insured by Ameriquest; that the notice of the August 2, 2007 order was sent out on August 3, 2007 and thus she could not have timely complied; that if the dismissal is allowed to stand, she will lose all the equity in these properties; that unbeknownst to her, the properties were insured for one month, from June 13, 2007 through July 12, 2007; that she is in the process of refinancing the properties; and that she has no money to pay for insurance. She further argued that one of the mortgage holders acted in bad faith and that the reason for her default on the mortgage was the increase in the interest rate from 14% to 20%, "which the Lender obligated Debtor to be liable for."

## JURISDICTION

A bankruptcy appellate panel may hear appeals from "final judgments, orders and decrees [pursuant to *28 U.S.C. § 158(a)(1)*] or with leave of the court, from interlocutory orders and decrees [pursuant to *28 U.S.C. § 158(a)(3)*]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.), 218 B.R. 643, 645 (B.A.P. 1st Cir. 1998)*. "A decision is final if it 'ends the [*11] litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id. at 646* (citations omitted). An order dismissing a chapter 11 case is a final, appealable order. See *In re Abijoe Realty Corp., 943 F.2d 121 (1st Cir. 1991)* (reviewing bankruptcy court's dismissal of chapter 11 case).

## STANDARD OF REVIEW

Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), [6] *§ 1112* provided that a bankruptcy court "may" dismiss or convert a chapter 11 case for cause.

Appellate courts accordingly reviewed a bankruptcy court's dismissal of a chapter 11 case for abuse of discretion. See *De Jounghe v. Lugo Mender (In re De Jounghe), 334 B.R. 760, 765 (B.A.P. 1st Cir. 2005)*. However, BAPCPA amended *§ 1112* to provide that a bankruptcy court "shall" dismiss or convert a chapter 11 case for cause. [7] Thus, the bankruptcy court's discretion to dismiss or convert chapter 11 cases has been restricted for cases filed after the effective date of the BAPCPA. See *11 U.S.C. § 1112(b)(1)*. We thus review the bankruptcy court's findings of fact for clear error and conclusions of law *de novo*. See *T.I. Fed. Credit Union v. DelBonis, 72 F.3d 921, 928 (1st Cir. 1995)*; [*12] *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.), 43 F.3d 714, 719-20 n.8 (1st Cir. 1994)*.

> 6 The Bankruptcy 6 Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 442(a) (2005), effective in cases commenced on or after October 17, 2005.
>
> 7 Prior to the BAPCPA, the bankruptcy court had more discretion in its determination of whether the case would be dismissed or converted. *Section 1112(b)* read in pertinent part as follows: "on request of a party in interest or the United States Trustee, and after notice and a hearing, the court **may** convert a case . . . or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause . . ." *11 U.S.C. 1112(b)(2004)*, amended by *11 U.S.C. § 1112(b)(2005)*(emphasis added).

## DISCUSSION

As previously stated, in general terms, *§ 1112(b)* provides for the dismissal or conversion of a chapter 11 petition, whichever is in the best interests of creditors and the estate, upon the request of a party in interest, after notice and a hearing, for cause. *Section 1112(b)(4)* provides a nonexclusive list of what constitutes cause.

BAPCPA limited the bankruptcy court's discretion to dismiss [*13] or convert a chapter 11 petition for cause by mandating conversion or dismissal if the movant establishes cause, unless the debtor presents unusual circumstances, the debtor meets certain criteria justifying the act or omission and likelihood of confirming a plan, or the bankruptcy court finds that the appointment of a trustee is in the best interest of creditors. 7 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy, P*

*1112.04[1]* (15th ed. rev. 2008). After the BAPCPA amendments, *§ 1112(b)(1)* is "no longer permissive, but instead mandates conversion or dismissal if the movant establishes exclusive cause, and no unusual circumstances establish that conversion or dismissal is not in the best interest of creditors." 5 Hon. William Norton, Jr., Norton Bankruptcy Law and Practice, § 103:66, at 103-14 (3d ed. 2008). However, the bankruptcy court still retains broad discretion to determine whether either conversion or dismissal is in the best interests of creditors and the estate after finding cause.

Section *1112(b)(4)(C)* specifically provides that "cause" to dismiss or convert a chapter 11 petition includes "failure to maintain appropriate insurance that poses a risk to the estate or [*14] the public." Certainly, failure to provide liability and property insurance to cover loss or damage to the Units owned by the Debtor comes within the purview of *§ 1112(b)(4)(C)*. The fact that the Debtor did not have appropriate insurance to cover the real property owned by her is amply supported by the record. Ameriquest procured forced-place insurance only over Units 1, 2 and 4, and only covering their interest. In those Units, the Debtor's equity remained uninsured. The Debtor provided no proof of insurance at all regarding Units 3 and 5. In fact, the Debtor does not dispute that she did not have insurance on the Units, but instead explains why she was unable to pay the insurance premium. [8] Even assuming that her explanations are credible, they do not bear on our inquiry. Additionally, the fact that the properties were insured for one month is irrelevant, as the properties remained uninsured thereafter. Therefore, there was cause to dismiss or convert the petition.

> [8]  At oral argument, the Debtor stated that she has since secured insurance on the Units, and tendered proof of such insurance to the Panel. We decline to consider such evidence as it does not bear on the question of whether [*15] cause to dismiss the Debtor's case existed at the time the bankruptcy court dismissed her case. We note, however, that if the Units are indeed presently appropriately insured, in a new chapter 11 case, the failure to have insurance would not be cause to dismiss it.

The record shows that the Debtor failed to present evidence for the bankruptcy court to identify that there were unusual circumstances to establish that dismissal was not in the best interests of creditors and the estate. Also, the Debtor did not establish a reasonable likelihood that a plan could be confirmed or that the failure to obtain insurance over the property was reasonably justified. On the contrary, the evidence before the bankruptcy court was that, in addition to not providing insurance, the Debtor was unable to sell or refinance the Units, and could not make the mortgage payments.

One exception to the mandatory nature of conversion or dismissal, once cause is established, is in *§ 1104(a)(3)*. It provides that "if grounds exist to convert or dismiss the case under *section 1112*, but the bankruptcy court determines that the appointment of a trustee or an examiner is in the best interests of creditors and the estate," [*16] the appropriate remedy is the appointment of a chapter 11 trustee, and not the dismissal or conversion of the petition. The record shows that the bankruptcy court considered the UST's suggestion for the appointment of a trustee, but discarded it under the circumstances of this case. The bankruptcy court's conclusion has not been challenged on appeal.

The UST established cause to convert or dismiss the case and the bankruptcy court dismissed the case. The bankruptcy court did not make a specific finding that dismissal was in the best interests of creditors and the estate. However, the bankruptcy court is not required to make a specific finding that its decision to convert or dismiss is in the best interests of creditors and the estate upon granting a motion to convert or dismiss for cause, when the debtor or the moving party have not argued that the alternate solution is in the best interests of creditors and the estate. The burden is on the party making a specific request for either conversion or dismissal to argue and present evidence in support of its position. Upon failure to argue or present evidence for either alternative, conversion or dismissal, the argument is waived on appeal. [*17] In any event, neither the Debtor nor the UST has raised the argument on appeal. Moreover, considering the multiple references made by the bankruptcy court to the Debtor's inability to obtain insurance, make payments on the mortgages and to sell or refinance the property, the determination of dismissal being in the best interests of creditors and the estate is implied.

The Debtor argues that the bankruptcy court dismissed her case on insufficient notice. Specifically,

2008 Bankr. LEXIS 3968, *17

she argues that the August 2, 2007 order, which stated that the Debtor's case would be dismissed unless she filed with the bankruptcy court a certificate of insurance by 12:00 p.m. on August 3, 2007, was postmarked August 3, 2007, and could not have been received before August 4, 2007, thus making it impossible for her to comply with the order. This argument is wholly disingenuous given that the bankruptcy court first threatened to dismiss the Debtor's case for failure to maintain appropriate insurance on March 26, 2007, and then continually gave her more opportunities to obtain appropriate insurance. The bankruptcy court first ordered that the Debtor's case would be dismissed if she did not obtain insurance by July 13, [*18] 2007, and then extended the deadline to July 31, 2007, and *then* ordered that the case truly would be dismissed if a certificate of insurance was not filed by 12:00 p.m. on August 3, 2007. Notably, the bankruptcy court did not dismiss the case until August 16, 2007. Moreover, the bankruptcy court clerk's office certified that the August 2, 2007 order was mailed on August 2, 2007.

Additionally, the Debtor should have been monitoring the court docket, particularly in light of the fact that she failed to meet the July 31, 2007 deadline and filed yet another motion to extend the deadline. Therefore, she was well aware that her case could soon be dismissed. See *Mirpuri v. ACT Mfg., Inc., 212 F.3d 624, 631 (1st Cir. 2000)* (concluding that plaintiff's reliance on a telephonic inquiry in lieu of checking a court docket was not excusable neglect, and citing several cases holding that failure to check court dockets is not excusable neglect). The record is clear that the bankruptcy court afforded the Debtor an abundance of notice as to the impending dismissal of her case for failure to maintain appropriate insurance.

**CONCLUSION**

We conclude that the bankruptcy court did not err in dismissing the Debtor's [*19] case. The bankruptcy court's finding that there was "cause" to dismiss the chapter 11 case pursuant to *§ 1112(b)* is amply supported by the record as the Debtor failed to maintain appropriate insurance on the Units. Accordingly, the dismissal order is **AFFIRMED**.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

    3801 University Avenue, Suite 720, Riverside, CA 92501

A true and correct copy of the foregoing document entitled (*specify*): _____
U.S. Trustee's Motion to Dismiss Bankruptcy Case_____
_____
_____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 02/02/2015_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Debtor's Counsel, Dennis Winters    winterslawfirm@cs.com
Michael J Bujold    Michael.J.Bujold@usdoj.gov
Edward J Fetzer    edwardfetzer@gmail.com, caecf@tblaw.com
Del Hardy    front98@hardylawgroup.com

☑ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) ___02/02/2015_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor, Michael Rulifson, 31566 Railroad Canyon Road, PMB 128, Canyon lake, CA 92587-9446

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) __02/02/2015_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Meredith A. Jury, 3420 Twelfth St. Ste. 325, Riverside, CA 92501-3819 (overnight mail)

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 02/02/2015 | Everett L. Green | /s/ Everett L. Green |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**Attachment Page**

1.  <u>**NEF Service List continued:**</u>

    Merdaud Jafarnia     bknotice@mccarthyholthus.com, mjafarnia@mccarthyholthus.com

    Jeannette Marsala     jmarsala@houser-law.com, jmann@houser-law.com

    Kelly M Raftery     bknotice@mccarthyholthus.com

    Cassandra J Richey     cmartin@pralc.com

    Bill Taylor     ecfnotices@4stechnologies.com

    United States Trustee (RS)     ustpregion16.rs.ecf@usdoj.gov

    Gilbert B Weisman     notices@becket-lee.com